IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-CV-754-BO

MUMMIES OF THE WORLD TOURING )
COMPANY, LLC, )
)
        Plaintiff, )
)
v. ) O R D E R
)
DESIGN AND PRODUCTION, INC., )
EDWARD J. TOLCHIN, and FETTMANN, )
TOLCHIN, & MAJORS, P.C., )
)
        Defendants. )

This matter is before the Court on defendants' motion to dismiss amended complaint or, in the alternative, to transfer venue [DE 21]. For the reasons stated herein, the defendants' motion to dismiss is GRANTED and the plaintiff's complaint is DISMISSED.

## BACKGROUND

The relationships between the parties in this matter are somewhat convoluted[1] and require a brief explanation. Plaintiff Mummies of the World ("MOW") participates in a traveling exhibition of sixty-five mummies and related artifacts from around the world ("the mummy exhibit"). MOW is a Florida Limited Liability Company. American Exhibitions, Inc. ("AEI") is an affiliate of MOW and is incorporated in Florida. AEI is the producer and manager of the mummy exhibit. Both AEI and MOW deny ownership of the mummy exhibit itself, but insist that the artifacts are on loan from various private collections. In the course of the mummy exhibit, AEI contracted with defendant Design and Production, Inc. ("D&P") for the production

---

[1] There are serious concerns about the disjointed nature of this litigation. First, the plaintiff and AEI, its affiliate, are attempting to orchestrate litigation arising out of connected events in at least four district courts (Eastern District of Virginia, District of Maryland, Southern District of Florida, and Eastern District of North Carolina

1

of materials related to the mummy exhibit ("exhibit assets"). After AEI breached its contract with D&P by failing to make its final payment, D&P brought suit against it in Virginia, case number 1:10-CV-988-GBL-TCB ("the Virginia litigation"). In connection with that lawsuit, D&P was awarded $488,677.50, plus pre-and post-judgment interest, and an additional $131,004.92 in attorney's fees and costs ("the Virginia Judgment"). This judgment remains unsatisfied and D&P continues to attempt to collect on it. As part of its attempts to collect on the Virginia Judgment, D&P registered the judgment in the Western District of North Carolina.

During early 2012 the mummy exhibit was on display at Discovery Place, a science museum located in Charlotte, North Carolina. On February 3, 2012, plaintiff's counsel, Paul Sheridan, sent a letter to Edward Tolchin, D&P's counsel, advising him that AEI had transferred ownership and possession of the exhibit assets to plaintiff MOW. Plaintiff's counsel copied John McKay, president of Discovery Place, on the letter to Mr. Tolchin. The letter was sent from Mr. Sheridan's Raleigh, North Carolina office to Mr. Tolchin's Fairfax, Virginia office.

On February 7, 2012, Mr. Tolchin responded to Mr. Sheridan's letter. Mr. Tolchin's response was sent from his Fairfax, Virginia office to Mr. Sheridan's Raleigh, North Carolina office. At the time of Mr. Tolchin's response he was an attorney with Fettman, Tolchin & Majors, PC. At some point after the February 7 letter, Mr. Tolchin left that firm and joined Offit Kurman, P.A. In the February 7 letter Mr. Tolchin stated, in pertinent part:

> It is apparent from the information in your letter that your client, Mummies of the World Touring Company, LLC ("MOWTC"), has engaged in fraudulent transfers with its affiliate, American Exhibitions, Inc. ("AEI"). As you know, my client, Design and Production, Incorporated, sold the Exhibit Assets at issue to AEI. The sane Exhibit Assets, however, are now being licensed by MOWTC according to your letter...
> Given the apparent impropriety of the actions disclosed in your February 3 letter, demand is hereby made that you immediately (a) cease and desist from facilitating any actual or contemplated fraudulent transfers, (b) direct you client to

2

> hold all assets, including cash receipts, in trust for my clients, and (d) provide to us the following:
>
> 1. A complete report concerning Discovery Place's knowledge of the fraudulent transfer of the Exhibit Assets. . .

On November 19, 2012, the defendants removed this matter from Wake County Superior Court. On December 11, 2012, the plaintiff filed an amended complaint. The amended complaint alleged claims for intentional interference with prospective contractual relations, defamation, and violations of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA).[2] The defendants seek to have this complaint dismissed for lack of personal jurisdiction or plaintiff's failure to state a claim upon which relief might be granted. In the alternative, the defendants seek to have this matter transferred to federal district court in Virginia.

In addition to this matter commenced by MOW, American Exhibitions, Inc. has instituted at least two other lawsuits against the defendants and relating to attempts to enforce the Virginia judgment. In the Southern District of Florida the case is styled: *American Exhibitions II, Inc. v. Design and Production, Inc., Fettmann, Tolchin & Majors P.C., and Edward J. Tolchin*, 9:12-CV-81127-KAM. In the District of Maryland the case is styled: *American Exhibitions, Inc., v. Offit Kurman, P.A. d/b/a Offit Kurman and Edward Tolchin*, 1:12-CV-03555-GLR.

---

[2] The Court also notes that the plaintiff's statements regarding which state's laws should control are curious. The plaintiff's complaint explicitly attempts to plead a claim under North Carolina's UDTPA. However, the plaintiff's briefings suggest that it believes Florida law should be applied to some of its claims. [DE 27]. In North Carolina tort actions choice of law is determined by where the injury took place as measured by "where the last event takes place which is necessary to render the actor liable for an alleged tort." *N.C. Mut. Life Ins. Co. v. McKinley Financial Service, Inc.*, 386 F.Supp.2d 648, 658 (2005). The standard for determining choice of law in UDTPA claims is the same. *See United Virginia Bank v. Air-Lift Assocs. Inc.*, 79 N.C.App. 315, 322 (1986). Presumably the plaintiff knew the choice of law standard for both these claims when it drafted its complaint and chose to allege a UDTPA claim under North Carolina law – thereby acknowledging that North Carolina law is properly applied. It is disingenuous for the plaintiff to now attempt to persuade the Court that different law should be applied to these separate claims even though both are properly evaluated under the same choice of law standard. The plaintiff is the master of its complaint; it has applied North Carolina law to this matter and the Court will do the same. *See e.g. Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S.826, 831 (2002).

## DISCUSSION

### I. RULE 12(b)(2) STANDARD

The defendants have asserted that this Court lacks personal jurisdiction over them. When a challenge to personal jurisdiction is addressed by a motion under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The district court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction" *Id.* Once a defendant has provided specific details contrary to a plaintiff's assertion of facts supporting jurisdiction, a plaintiff's "bare allegations that the defendants had significant contacts with the [forum] state" are insufficient to establish jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396, 402-03 (4th Cir. 2003). The plaintiff "must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist." *Clark v. Remark*, 1993 WL 134616, at *2 (4th Cir. 1993).

In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, (1) the forum state's long-arm statute must authorize the exercise of personal jurisdiction and (2) the defendant must have sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Christian Sci. Bd. Of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause,"

4

these inquiries collapse into one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Personal jurisdiction can either be specific or general. First, if the foreign party maintains "continuous and systematic" contacts with a state, the state has general personal jurisdiction over the party, and the nonresident may be sued in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952). When no such general contacts exist, a court may assert specific personal jurisdiction only if the litigation arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Here, the Court finds the issue of personal jurisdiction to be questionable, but even assuming that this Court possesses personal jurisdiction over the instant defendants it is clear that the claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

II. RULE 12(b)(6) STANDARD.

A Rule 12(b)(6) motion test the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim to relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere recitals of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III. THE PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS' ACTIONS WERE THE BUT-FOR CAUSE OF MOW'S FAILED RELATIONSHIP WITH DISCOVERY PLACE.

North Carolina has recognized the tort of wrongful interference with a prospective contract. *See e.g., Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.*, 412 S.E.2d 636, 644

5

(1992). Under North Carolina law, a plaintiff must show that the defendants: (1) maliciously induced a third person not to enter a contract with the plaintiff and (2) that but for the defendants' interference, a contract between the plaintiff and third party would have ensued. *Dalton v. Camp*, 548 S.E. 2d 704, 709-10 (N.C. 2001).

Although North Carolina recognizes this tort, the plaintiff has failed to state a claim for which relief may be granted because it has failed to allege that the defendants' actions were the but-for cause of any breakdown in the contractual relationship between MOW and Discovery Place. In fact, the plaintiff simply recites the elements of such a claim in its complaint. Beyond its bare assertions, the plaintiff offers nothing to suggest how likely it was that Discovery Place would continue to contract with them. Further, the plaintiff fails to link the defendants' alleged inducement to Discovery Place's actions. There is nothing to suggest that the defendants were acting with any motive beyond recovering the Virginia Judgment. Finally, there is nothing to indicate the expected scope of MOW's future contractual relations with Discovery Place. Although scope is not an element required to be shown by this tort, such an allegation would allow the Court to determine whether significant future contractual relations were actually expected between the parties. As the complaint is written there is nothing to indicate whether Discovery Place's termination of its contractual relationship was the result of the natural course of its business or influenced by a third party. As such, the plaintiff has not stated a facially plausible claim and it is properly dismissed under Rule 12(b)(6).

IV. THE ALLEGED DEFAMATORY STATEMENTS WERE MADE IN CONJUNCTION WITH DEFENDANTS' ATTEMPTS TO COLLECT ON A JUDGMENT AND ARE PROTECTED.

It is well-established by North Carolina courts that statements made in connection with a judicial proceeding are privileged and will not support a civil case for defamation – even if those statements are made with malice. *Harris v. NCNB Nat. Bank of N.C.*, 85 N.C.App. 669, 672-73

(1987). This "litigation privilege" obviously includes testimony that is made in open court, but also covers correspondence between parties that is sufficiently connected to the matters litigated in the judicial proceeding. *Id.*

Here, the defendants were simply attempting to collect the Virginia judgment. The plaintiff has pleaded no facts that suggest the correspondence was for any reason other than collecting that judgment. Further, given the location of the exhibitry that was the subject of the Virginia litigation, it was not beyond the scope of reasonable conduct for the defendants to send a copy of that correspondence to John MacKay. Because the correspondence was clearly for the purpose of collecting a judgment it was sufficiently connected to the Virginia litigation to be protected by the litigation privilege. As such, the correspondence may not form the basis for a civil defamation suit and the plaintiff's claim for such must be dismissed pursuant to Rule 12(b)(6).

V. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE NORTH CAROLINA UNFAIR DECEPTIVE TRADE PRACTICES ACT.

In order to state a claim under North Carolina's Unfair or Deceptive Trade Practices Act (UDTPA) a plaintiff must show: (1) an unfair or deceptive trade practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff. *See e.g. Dalton v. Camp*, 353 N.C. 647, 656 (2001). The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See e.g. Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 902 (4th Cir. 1996). Conduct constituting an unfair or deceptive trade practice can be somewhat nebulous to define, but "only practices involving some type of egregious or aggravating circumstances are sufficient to violated the UDTPA." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146 (4th Cir. 2012)(quoting *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 122-23 (4th Cir. 2006)(internal quotation marks omitted).

7

Importantly, a mere breach of contract – even if intentional – is not sufficient to support a cause of action under the UDTPA. *Kelly v. Georgia-Pacific, LLC*, 671 F.Supp.2d 785, 799 (E.D.N.C. 2009).

Here, the plaintiff has not set forth any facts that would support a finding that the defendants have acted egregiously. Rather, the plaintiff has identified a single act of the defendants – transmission of a single correspondence – that it found to be objectionable. This is not the type of intentional and oppressive behavior contemplated by a properly pleaded claim under the UDTPA and, therefore, the plaintiff has failed to state a facially plausible claim under the act. As such, it is proper to dismiss the plaintiff's claims under the UDTPA.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED

SO ORDERED.

This _11_ day of July, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8